**Carl R. PRUETT and Scott Martin, Plaintiffs,**

v.

**THE HARRIS COUNTY BAIL BOND BOARD and Harris County Defendants.**

No. CIV.A. H–03–3241.

United States District Court, S.D. Texas, Houston Division.

May 20, 2005.

David A. Furlow, Thompson & Knight LLP, Houston, TX, for Plaintiffs.

George A. Nachtigall, Deputy Chief Trial Division, Houston, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOYT, District Judge.

## I. INTRODUCTION

Pending before this Court are the plaintiffs' motion for summary judgment and the defendants' cross motion for summary judgment. This suit concerns the constitutionality of a Texas state law, TEX. OCC. CODE ANN. § 1704.109, that forbids certain solicitations by bail bondsmen. The plaintiffs, Carl Pruett and Scott Martin, are bail bondsmen whose practices conflict with the recently enacted statute. They have challenged section 1704.109 on multiple Federal and state constitutional grounds, and have brought a claim for relief under 42 U.S.C. §§ 1983 and 1988. The defendants, the Harris County Bail Bond Board and Harris County, defend the state statute in lieu of the Texas Attorney General, who declined to intervene in this case.

*Procedural History*

The plaintiffs filed the original complaint on August 13, 2003. This Court denied the plaintiffs' motion for temporary restraining order, preliminary injunction, and declaratory judgment on October 27, 2003. On December 22, 2003, this Court denied a motion to intervene filed by International Fidelity Insurance and Allegheny Casualty, a ruling affirmed on appeal to the Fifth Circuit. The parties filed the instant motions for summary judgment on September 20, 2004. After considering the motions, responses, the pleadings, and the applicable law, this Court determines that the plaintiffs' motion should be GRANTED in part and DENIED in part, and the defendants' motion DENIED in its entirety.

## II. FACTUAL BACKGROUND

The plaintiffs are agents of corporate bail bond sureties whose methods of practice conflict with section 1704.109 of the Bail Bond Act. TEX. OCC. CODE ANN. § 1704.109. Harris County, is a political subdivision of the State of Texas and the Harris County Bail Bond Board ("the Board"), created by Texas statute, is a body comprised of thirteen members. While neither defendant participated in the creation or enactment of section 1704.109, the Board is vested with enforcement authority. *Id.* at § 1704.103. The Legislature passed section 1704.109 in June 2001, and it provides as follows:

(a) a board by rule may regulate solicitations or advertisements by or on behalf of bail bond sureties to protect;

(1) the public from:

(A) harassment;

(B) fraud;

(C) misrepresentation; or

(D) threats to public safety; or

(2) the safety of law enforcement officers.

(b) A bail bond surety, an agent of a corporate surety, or an employee of the surety or agent may not make, cause to be made, or benefit from unsolicited contact:

(1) through any means, including in person, by telephone, by electronic methods, or in writing, to solicit bonding business related to an individual with an outstanding arrest warrant that has not been executed, unless the bail bond surety or agent for a corporate surety has an existing bail bond on the individual; or

(2) in person or by telephone to solicit bonding business:

(A) that occurs between the hours of 9 p.m. and 9 a.m.; or

(B) within 24 hours after:

(i) the execution of an arrest warrant on the individual; or

(ii) an arrest without a warrant on the individual.

(c) This section does not apply to a solicitation or unsolicited contact related to a Class C misdemeanor.

*Id.*

Subsection (a) of the statute vests authority in the Board to further regulate on the basis of certain stated objectives, while subsection (c) excludes class C misdemeanors (relatively small offenses punishable by fine only). The plaintiffs challenge subsection (b) of the statute, which concerns unsolicited bail bondsman contact.

Subsection (b)(1) (hereinafter "the unexecuted warrant rule") prohibits bail bond agents[1] from soliciting, through "any means," business regarding an unexecuted (i.e., outstanding) arrest warrant. The statute provides an exception, however, for any agent who has an existing bail bond on the individual. On the other hand, subsection (b)(2) (hereinafter "the 24–hour rule") restricts the time during which an agent may solicit bail bond business after an arrest has been made. It prohibits solicitations "in person or by telephone" that occur between the hours of 9:00 p.m. and 9:00 a.m., or within 24 hours after an individual has been arrested. The 24–hour rule contains no exception for bail bondsmen with existing bail bonds on an individual. Hence, a bondsman violates section 1704.109 by making phone calls on unexecuted arrest warrants within the prohibited time windows.

Bail bondsmen use many methods to solicit business, and a given bail bondsman may utilize any combination of methods for solicitation. One particularly useful tool for soliciting bail bond business is the Harris County Justice Information Management System ("JIMS"). JIMS gives speedy access to names and addresses of arrestees and subjects of warrants. As a result, Harris County delays by 48 hours the posting of information on an individual subject to an arrest warrant, allowing law enforcement officers an opportunity to execute the warrant. The information in JIMS is public information.

The statute, however, does not prevent attorneys or law enforcement officials from alerting an individual to the fact that he is the subject of an arrest warrant. Thus, attorneys and law enforcement officials may send letters notifying an individual of an outstanding warrant. In addition, law enforcement officials may issue press releases announcing the issuance of arrest warrants. Because the information in JIMS is public and the statute applies only to bail bondsmen, any individual, including a lawyer, could obtain information about unexecuted warrants and gratuitously notify the subject without violating the statute.

No legislative history accompanies section 1704.109, and the parties have sought to create a record primarily through affidavits. The defendants admit that they have no actual knowledge of any information that the Legislature relied upon when it enacted section 1704.109. The defendants, however, proffer complaints filed with the Board that they readily admit may not have been before the Texas Legislature. The complaints pertained to bail bondsmen making phone calls in the late night/early morning hours and bail bondsmen calling the subjects of unexecuted warrants "tipping" them off. Arguably, this permitted the subject to flee or potentially harm others. Nevertheless, the complaints led the Board to adopt Local Rules 24 and 25, which share many simi-

---

1. Although the statute refers to "a bail bond surety, an agent of a corporate surety, or an employee of the surety or agent," for simplicity the Court will simply use the term "agent."

larities with section 1704.109.[2]

## III. CONTENTIONS OF THE PARTIES

The plaintiffs have sued the defendants claiming that section 1704.109 violates a litany of state and federal constitutional provisions, including the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 3, 8, 11, 13, 19 and 29 to the Texas Constitution.[3] Specifically, under the United States Constitution, the plaintiffs contend that the statute violates their free speech rights under the First Amendment. In the alternative, the plaintiffs contend that the statute is void for vagueness under the First and Fourteenth Amendments, that it violates Equal Protection principles and that it abridges the plaintiffs' and their customers' right to counsel under the Sixth Amendment and their right to be free from excessive bail under the Eighth Amendment. The plaintiffs also seek injunctive relief for the violation of their civil rights pursuant to 42 U.S.C. § 1983 and for attorney fees pursuant to 42 U.S.C. § 1988.

## IV. STATEMENT OF THE LAW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to ... judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. Throughout the analysis, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 247–49, 106 S.Ct. 2505. A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *See Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir. 1991).

**2.** Texas courts reviewed the local rules. See footnote 3, infra.

**3.** The Court is aware of the state court ruling in *Harris County Bail Bond Bd. v. Pruett,* No. 01–02–01043–CV, 2004 WL 2307362 (Tex. App.-Houston [1 Dist.] October 14, 2004, no pet. h.) (involving a local Harris County Bail Bond Board Rule very similar to § 1704.109). This Court abstains from ruling on Texas Constitutional questions. *See Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Nevertheless, because the federal constitutional rulings are not "effectively advisory," the Court proceeds with the case. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 12, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (noting that a court should normally hear federal constitutional challenges because abstention is an "extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it").

■ This case involves the interpretation of a Texas statute and, as such, the Court refers to Texas law on statutory interpretation. Statutes are interpreted as a matter of law. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). The primary purpose of statutory interpretation is to determine the legislature's intent. *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002). Hence, the plain meaning of the words used by the Legislature is the strongest indicator of its intent. TEX. GOV'T CODE ANN. § 311.011 (Vernon 2004); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002).

■ The First Amendment, as applied to the states through the Fourteenth Amendment, protects speech from undue government restraint. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N. Y.*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). However, all speech is not equal. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985); *see also Id.* at 562, 100 S.Ct. 2343 (citing, *inter alia*, *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 455–456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)). While pure political expression is afforded strong protection, and obscene speech is afforded no protection, commercial speech receives a form of intermediate protection. *See, e.g., Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); *Edenfield v. Fane*, 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). Hence, the burden is on the government to justify a restraint on free speech, which burden varies, depending on the context of the speech. *See Id.*

■ Protected commercial speech is characterized as "truthful, non-deceptive information proposing a lawful commercial transaction." *Edenfield*, 507 U.S. at 765,

113 S.Ct. 1792. However, all speech, including personal solicitations, must ultimately be assigned a level of protection correlative of "the nature of the speech taken as a whole and the effect of the compelled statement thereon." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (holding that solicitation of charitable contributions is "inextricably intertwined with otherwise fully protected speech" and thus merited heightened protection). The general framework for scrutinizing the majority of commercial speech is set forth in *Central Hudson*, 447 U.S. at 564, 100 S.Ct. 2343 (1980).

■■ Under the threshold inquiry of *Central Hudson*, courts determine whether the commercial speech concerns unlawful or misleading activity. *Id.* at 563–564, 100 S.Ct. 2343. If the speech concerns unlawful or misleading activities, it may be freely regulated; otherwise, courts consider the speech under *Central Hudson's* three-pronged analysis. *Id.* at 564, 100 S.Ct. 2343. First, the government must put forth a substantial interest in support of its statute; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation must be narrowly drawn. *Id.* at 564–565, 100 S.Ct. 2343.

■ Even if a statute does not violate Free Speech principles, it is void for vagueness when its "prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A person is entitled to know what conduct is prohibited and accepted. *Id.* Thus, when a statute might inhibit a constitutionally protected right, it is subject to thorough review. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct.

1186, 71 L.Ed.2d 362 (1982) ("perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights").

■ The Fourteenth Amendment guards citizens against unfair treatment by the state. When an individual is not the subject of a protected class, and the right impinged is not a fundamental right, the appropriate standard is rational basis review. *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Rational basis review asks whether there is a "relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 320, 113 S.Ct. 2637. "On rational-basis review, a ... statute ... comes to us bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to [negate] every conceivable basis which might support it." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314–15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (citations omitted).

■ To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and demonstrate that a person acting under "color of state law" committed the alleged deprivation. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000). Government entities may be held liable under § 1983 for constitutional violations only if the violation represents a governmental policy or custom. *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (finding that municipal liability under § 1983 requires the plaintiff to show that the harm was caused by a constitutional violation and that the municipality is responsible for that violation).

## V. APPLICATION OF THE LAW.

■ The speech challenged in this case is commercial speech. A bail bondsman's solicitation merely proposes a commercial transaction. Although the result of a consummated business transaction may be to avoid arrest or get out of jail, the sole purpose of contacting the potential client is to secure business. The fact that the business that a bail bondsman pursues coincidentally involves constitutional rights does not propel the speech to a higher level of First Amendment protection. Indeed, the Supreme Court's decision in *Went For It* is instructive. There the involved statute implicated numerous constitutional rights and the Supreme Court had no trouble identifying lawyer solicitations as purely commercial. *See* 515 U.S. at 620–21, 623, 115 S.Ct. 2371 (involving a constitutional challenge to a Florida Bar rule that prohibited attorneys from using direct mail advertisements to solicit wrongful death and personal injury clients within thirty days of the accident or disaster causing death or injury); *see also Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 459, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) ("A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the state's proper sphere of economic and professional regulation.").

■ Contrary to the plaintiffs' arguments, the speech in this case is not "inextricably intertwined with otherwise fully protected speech," as in the case of *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. at 796, 108 S.Ct. 2667. *Riley* involved a for-profit company that solicited charitable contributions on behalf of non-profit charities. *Id.* Solicitation of charitable donations is a narrow exception to the commercial

speech rule. However, the facts of the case at bar do not remove bail bondsman speech from the ambit of commercial speech. *See id.,; Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

The plaintiffs also urge that a test more stringent than *Central Hudson* should apply The Supreme Court has yet to overrule or modify the *Central Hudson* analysis for a case such as this. *Thompson*, 535 U.S. at 367, 122 S.Ct. 1497 ("Although several members of the Court have expressed doubts about the *Central Hudson* analysis and whether it should apply in particular cases ... there is no need in this case to break new ground. *Central Hudson*, as applied in our more recent commercial speech cases, provides an adequate basis for decision."); *see also U.S. West, Inc. v. Fed. Communications Comm'n*, 182 F.3d 1224, 1234 n. 5 (10th Cir.1999). Because there is no contention that the solicitations by bail bondsmen concern illegal activity or would be misleading, the three-pronged analysis of *Central Hudson* applies 447 U.S. at 566, 100 S.Ct. 2343.

*First Prong of Central Hudson*

■ It is clear that the defendants may justify the governmental restraint on speech only with those "asserted interests" offered at the origination of the statute or rule. *Edenfield*, 507 U.S. at 768, 113 S.Ct. 1792 ("the *Central Hudson* standard does not permit [the Court] to supplant the precise interests put forward by the state with other suppositions"). The plaintiffs contend that, because no legislative history exists, the defendants lose on this point because neither the defendants nor the Court can bring forth new interests. While the plaintiffs pinpoint a problem in the lack of legislative history—a problem that will be addressed in turn—they either misread *Central Hudson's* first requirement or fail to realize the primary manner

in which the state asserts its "substantial interests."

The first prong of *Central Hudson* requires that the state assert a substantial interest to be served by the statute. 447 U.S. at 566, 100 S.Ct. 2343. It is an elementary principle of statutory interpretation that the statute itself provides the best evidence of the state's intent. TEX. GOV'T CODE ANN. § 311.011 (2004); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002). In this case, the state's asserted interest are to protect the public from harassment, fraud, misrepresentation, and threats to public safety and to protect the safety of law enforcement officers. § 1704.109(a). Separately or collectively these interests are substantial. However, both may be and are freely protected. It is when the state's interest seeks to regulate activity that is not misleading or illegal that greater scrutiny is required. 447 U.S. at 566, 100 S.Ct. 2343. The asserted interest of protecting the public from "harassment," therefore, merits closer study.

Section 1704.109 covers both in-person (telephone or face-face) and impersonal (mailings, etc.) solicitations. It is true that in-person solicitations are a cause for greater concern than mail-in solicitations because the danger of harassment is greater. *Shapero v. Kentucky Bar Assn.*, 486 U.S. 466, 475, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) ("the mode of communication makes all the difference."). However, while in-person solicitations in general may be bothersome to the recipient, the mere fact that a person may be bothered or annoyed does not justify restraint. *See, e.g., International Society for Krishna Consciousness v. Lee*, 505 U.S. 672, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992) (soliciting contributions in airports); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (di-

rect mail advertisements for contraceptives). On the other hand, "solicitation that is neither fraudulent nor deceptive may be pressed with such frequency or vehemence as to intimidate, vex, or harass the recipient." *Edenfield,* 507 U.S. at 769, 113 S.Ct. 1792. Because solicitation may be pressed too vigorously, the "protection of the public from these aspects of solicitation is a legitimate and important state interest." *Ohralik,* 436 U.S. at 462, 98 S.Ct. 1912. Hence, the conduct of bail bondsmen may be circumscribed only when they reach beyond normal solicitation to the point of objective harassment.

*Second Prong of Central Hudson*

 The second prong of *Central Hudson* requires the defendants to demonstrate that the restrictions on commercial speech directly and materially advance each interest. 447 U.S. at 564–565, 100 S.Ct. 2343. The regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. *Id.* Hence, the burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. *Edenfield,* 507 U.S. at 770–71, 113 S.Ct. 1792.

 The plaintiffs have repeatedly urged that the defendants cannot sustain their burden under this prong because the defendants have no knowledge of the evidence that the Texas Legislature considered when enacting this law. The Texas Attorney General declined to intervene in this case to defend the state statute and there is no legislative history. As a result, the defendants' justifications for the enactment of section 1704.109 have been created *post-hoc,* without any suggestion that the Texas Legislature was cognizant of the evidence now presented. Hence, the issue is whether a defendant, without any knowledge of the evidence that was before the state Legislature when a law is adopted can sustain his burden of justifying a restraint on commercial speech with evidence that is admittedly generated after the enactment of the statute. The Court holds that the defendants cannot.

 The policy behind the First Amendment is clear that speech should be restrained as a last resort, and that a substantial burden must be overcome when the government seeks to restrain commercial speech. Therefore, restraint that is based on mere conjecture or guessing is prohibited. *Id.* A statute restraining commercial speech must be justified by evidence that was before the Legislature at the time that the statute was adopted. *See Moore v. Morales,* 63 F.3d 358, 362 (5th Cir.1995). ["*Florida Bar* does not require an overwhelming record in support of the 30–day ban. Rather, it echoed prior precedent requiring only that there be more than 'mere speculation and conjecture.'"] The evidence need *not* be overly burdensome, but rather it must be proportional to the speech it will affect.[4]

---

**4.** The Court takes notice of areas of law requiring some evidentiary justification for an enacted law, especially First Amendment cases involving regulation of sexual-oriented businesses. *See, e.g., City of Los Angeles v. Alameda Books,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002); *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 51, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (involving zoning of sexual oriented businesses; some evidence of secondary effects is required, although one city can rely on another city's evidence). *See also, Kassel v. Consolidated Freightways Corp. of Del.,* 450 U.S. 662, 671, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) (involving the regulation of highway safety under the commerce clause; statistics and studies presented by the state "failed to present any persuasive evidence

Even assuming that the defendants' belated proffered evidence merits consideration, it as insufficient to demonstrate that the restrictions on commercial speech directly and materially advance each interest identified. Specifically, there is no evidence that the solicitations were fraudulent or resulted in misrepresentation. Hence, there is no purpose to be advanced. And, limiting the times during which a bail bondsman may contact an individual or his family does nothing to prevent fraudulent behavior. Therefore, the actual interest of the government is not apparent. A court will not "turn away if it appears that the stated interests are not the actual interests served by the restriction." *Edenfield,* 507 U.S. at 768, 113 S.Ct. 1792 (citing *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 730, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982)).

■ Another professed purpose of the statute is to limit harassment. The defendants offer evidence that harassment occurs when, after a person is arrested and this information becomes available to bail bondsmen, multiple independent[5] bondsmen contact the family of the arrestee to notify the family of potential bail bond services. These contacts are made by telephone and may occur at any hour. However, there is no evidence to support the conclusion that when the opportunity presents, multiple calls do not occur. The statute does not prevent multiple calls from occurring. The statute merely prohibits calls during the 24 hours after arrest. Nothing prevents 30 separate phone calls from bail bondsmen after the 24–hour period has expired. Thus, the 24–hour

prohibition does not pass constitutional muster.

In addition, there is no evidence that the family would prefer to forgo the knowledge of a family member's arrest during the 24 hours following an arrest. While the defendants argue that "common sense" helps to justify this restraint, common sense likewise counsels that family members want to know the whereabouts of a loved one and secure legal representation, if appropriate. In this sense, both the First and Sixth Amendments weigh against the statute. The defendants also offer affidavits that citizen complaints were reduced after the implementation of a similar local rule. However, that evidence fails to account for the number of citizen complaints before the legislation was enacted and the nature of those complaints.

■ Although Tex. Bus. & Com. Code § 37.02(a)(2) (2002) prohibits telephonic solicitation from 9:00 p.m. to 9:00 a.m., the code covers only people soliciting a "consumer good or service," such as solicitation for the sale of real and personal property, or a service related to real or personal property. *Tex. Prac. Guide Bus. & Com. Litig.,* Ch. 32XIII, §§ 32:209–10 (citing Tex. Bus. & Com. Code Ann., §§ 37.01(2), 37.01(3)). Thus, the Act does not apply to the solicitation of bail bonding services.

■ The final proffered purpose for the statute is preserving the safety of the public and of law enforcement officers by prohibiting bail bonding companies from soliciting persons who are the subject of an unexecuted arrest warrant. In the abstract, the justification appeals to common

---

that 65–foot doubles [18–wheelers] are less safe than 55–foot singles").

**5.** The defendants are unclear whether they complain about one bondsman calling "20–40

times," or 20–40 bondsmen calling one time each. Because a rule can easily be made limiting each bondsman to one call per arrestee, the Court assumes the complaint pertains to multiple, independent bondsmen.

sense. Executing a warrant, a potentially dangerous event, is arguably safer when the officers have the element of surprise. Similarly, a defendant who is arrested before he is aware that a warrant is outstanding will have little opportunity to flee or obstruct justice. However, there is no data showing that in those instances where a person becomes aware of an outstanding warrant they flee or obstruct justice. Likewise, there is no evidence of an occurrence involving an arrestee who, after being alerted to an existing arrest warrant by a bail bondsman, subsequently injured an officer.

Finally, the facts illustrate that law enforcement officers and attorneys contact subjects of unexecuted arrest warrants without notable events. While common sense dictates that there exists the possibility that an individual might flee or hurt an officer, it is not based on substantial evidence. In this case, common sense will not justify the restraint on speech.

*Third Prong of Central Hudson*

The final prong of Central Hudson, whether the statute is narrowly drawn, does not require that the statute be drawn as narrowly as possible. Rather, courts ask whether "the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech" while still effectively serving the same interests. *Thompson* 535 U.S. at 371, 122 S.Ct. 1497. In this case, the Court notes that there are numerous alternatives to the total prohibition against contact with subjects of unexecuted arrest warrants. For instance, the county could increase the number of officers executing arrest warrants, thereby arresting risky offenders before the 48–hour JIMS window expires. Alternatively, officers could extend the JIMS blackout period from 48 hours to some longer period in order to give authorities enough time to execute the risky warrants. The prohibition against bail bondsmen solicitation could be limited to certain categories of risky arrest warrants (e.g., those for crimes of violence). According to the defendants, law enforcement officers have a screening mechanism that identifies which individuals get notified about unexecuted warrants. The same screening mechanism could be utilized by bail bondsmen. Such an arrangement would prevent risky "tip-offs" while allowing others to avoid an embarrassing arrest.

The Court's purpose is not to micromanage state law, but rather to be mindful that, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson* 535 U.S. at 373, 122 S.Ct. 1497. *See also Utah Licensed Beverage Ass'n v. Leavitt,* 256 F.3d 1061, 1073–75 (10th Cir. 2001) (holding that the government could not justify its speech regulations as directly and materially advancing state interests where the regulatory scheme was irrational and the government failed to demonstrate that the harms it recited were real or that the regulations would materially reduce those harms); *U.S. West, Inc.,* 182 F.3d at 1237 (holding the FCC could not justify its restriction on speech with mere conjecture—it could not demonstrate that the harms it recited were real and that the restriction would in fact alleviate those harms to a material degree where the government simply pointed to).

*The Plaintiffs' § 1983, Void for Vagueness and Equal Protection Claims*

Having concluded that the statute is unconstitutional, the defendants in this case are liable under 42 U.S.C. § 1983 for depriving the plaintiffs of their constitutional rights. A state statute, like the one in this case, is unquestionably the result of state action. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941, 102 S.Ct. 2744, 73 L.Ed.2d

482 (1982). Similarly, a state official who acts, or would act, pursuant to a state statute is a state actor for the purposes of section 1983. *See id.; Carhart v. Stenberg,* 192 F.3d 1142 (8th Cir.1999). The appropriate remedy however is not damages but injunctive relief. Therefore, the Court holds that the defendants should be enjoined from enforcing the statute. See *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

The plaintiffs have advanced other bases for holding the statute unconstitutional. They argue that the statute is void for vagueness and that it violates the "equal protection" clause of the Fourteenth Amendment as it distinguishes between bail bondsmen who have existing bond(s) with an accused and those who do not. The Court need not address these contentions in light of its holding.

## VI. CONCLUSION

For the reasons stated, the Court finds that the plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and the defendants' motion is DENIED. The Court HOLDS that the statute is unconstitutional and that the defendants are ENJOINED from enforcing it. The plaintiffs' claim for an attorneys' fee and costs is to be submitted to the Court on or before May 31, 2005. The defendants' response is due on or before June 10, 2005.

It is so ORDERED.